IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MAXIMUS S.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | No. 20 C 2261 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| ANDREW SAUL, Commissioner of Social Security, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

**INTRODUCTION**

Plaintiff applied for Supplemental Security Income under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§1381a, 1382c, a little over four years ago. (Administrative Record (R.) 204-212). He claimed that he has been disabled since infancy, due to deafness, ADHD, learning disability, and anxiety. (R. 204, 217, 221). Over the next two and a half years, plaintiff's application was denied at every level of administrative review: initial, reconsideration, administrative law judge (ALJ), and appeals council. It is the ALJ's decision that is before the court for review. See 20 C.F.R. §§404.955; 404.981. Plaintiff filed suit under 42 U.S.C. § 405(g) on April 10, 2020. The parties consented to my jurisdiction pursuant to 28 U.S.C. § 636(c) on May 1, 2020. [Dkt. #10]. Plaintiff asks the court to reverse and remand the Commissioner's decision, while the Commissioner seeks an order affirming the decision.

---

[1] Northern District of Illinois Internal Operating Procedure 22 prohibits listing the full name of the Social Security applicant in an Opinion. Therefore, the plaintiff shall be listed using only their first name and the first initial of their last name.

**ARGUMENT**

**I.**

**A.**

Plaintiff was born on May 18, 1998, and so he is alleging that he has been disabled from infancy. He was about 20 years old at the time of the ALJ's decision. (R. 14-35). Plaintiff has never had a job. At the time of his administrative hearing, he was attending the Rochester Institute of Technology in New York, in the New Signers Program. (R. 41, 43). Most of the teachers used sign language, and there were also interpreters. (R. 45). He loved his studies and social life there. (R. 43-44). He said he wanted to be a botanist or work with computers. (R. 47).

He had been on medication for his OCD/anxiety in high school, but he explained that he adjusted his diet, eating mostly fruit, and so he thought he no longer needed it. (R. 50). He saw a therapist/social worker once a month. (R. 51). His father, who testified at the plaintiff's hearing, said that when plaintiff was at home, he did not socialize, preferring to stay in his room. (R. 57). Other than that, he traveled around the bike trails on his bike. (R. 57). He also enjoyed photography. (R. 57). Crowds made him anxious. (R. 58). He didn't want to get his driver's license. (R. 59). He has what can best be called an alternative view on nutrition. He eats only fruit and, formerly, he experimented with the idea of taking in energy through breathing alone. (R. 50-51, 56, 1005).

As is generally the case in these proceedings, the medical record is immense – about 900 pages – and, as is also generally the case, unorganized and largely irrelevant. (R. 439-1321). As such, a long and tedious summary of the plaintiff's files will be dispensed with, and the medical record will be referenced only insofar as is necessary to address the parties' arguments. The focus

here is on the treatment records, summary of same, and psychological opinion from plaintiff's regular therapist, Alisa Cohen-Stein.

Since November 2014, plaintiff's mental health treatment has consisted primarily of therapy with Ms. Cohen-Stein, a therapist skilled in American Sign Language. (R. 997, 1009-32). On August 21, 2017, Ms. Cohen-Stein wrote a letter regarding the plaintiff's course of treatment and concluding that "competitive employment is not currently an option for [him]." (R. 990-91). On the same day, Ms. Cohen-Stein filled out a Mental Residual Functional Capacity form from plaintiff's counsel. (R. 992-96). She reported that plaintiff suffered from delusional disorder and social anxiety. She assigned a GAF score of 60, indicating moderate symptoms or limitations in social, occupational, or school function. *See* Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000). (R. 992, 1003). She reported he had no trouble following simple instructions, but would have increasing difficulty as instructions became more complicated. (R. 993). She indicated he also suffered from hearing loss, speech impediments, and ADHD. (R. 993). Ms. Cohen-Stein thought that plaintiff would be "off task" 30 percent of the workday, likely be absent three days each month, and would likely be unable to complete an eight-hour workday five days or more each month due to his impairments. (R. 995).

She explained that plaintiff is "intelligent, but distractible." His "functioning deteriorates" when "stressed by environmental [and] academic demands." He tries to compensate by drawing "unusual cartoons" and "creat[ing] unusual 'science experiments,'" but these "take...a lot of time out of his school day" and take him off task. Ms. Cohen-Stein "do[es] not see how he can [function] independently without supervision in a competitive work environment unless it is a highly unusual, isolated [and] creative setting...." Even then, she believes he "would likely be unproductive [and]

3

erratic." (R. 996).

**B.**

After an administrative hearing at which plaintiff, represented by counsel, and his father testified, as well as a medical expert and a vocational expert, the ALJ determined the plaintiff had the following severe impairments: bilateral hearing loss and speech impairment, obsessive-compulsive disorder, attention deficit-hyperactivity disorder, and an eating disorder. (R. 19). The ALJ then found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, specifically considering Listing 2.11 for hearing loss, and 12.06, 12.11, 12.13, for mental impairments. The ALJ determined that plaintiff had moderate limitations in all areas of functioning: in understanding and applying information; interacting with others; concentration, persistence, and pace; and managing himself. (R.19-20).

The ALJ then determined that plaintiff could perform a full range of all exertional levels of work, except that he should have:

> no exposure to loud noises or requirement of clear speaking ability; can understand, remember, and carry out simple job instructions; tolerate occasional interaction with coworkers, supervisors, but no collaborative or joint projects with them or engagement of the public; and no fast paced jobs that have numerically strict hourly quotas, but can meet end of day employer expectations.

(R. 22). The ALJ went on to summarize the plaintiff's testimony, his father's testimony, and the therapy record. (R. 22-25). The ALJ found that the plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for reasons explained in this decision." (R. 23).

The ALJ noted that plaintiff had problems when he refused to stay on his medication. (R. 24). He also noted that plaintiff had been treated conservatively. (R. 25). And, the ALJ discussed the plaintiff's activities, including the fact he lived independently in a dormitory a few hundred miles away in New York state. (R. 26).

The ALJ assigned the opinions of the state agency reviewing doctors great weight regarding plaintiff's hearing loss. He found the state agency reviewing psychologists' opinions influential but felt the evidence supported greater than the mild limitations they found. He instead assigned "supreme persuasive weight" to the opinion of the consultative examiner, who found moderate limitations, but an ability to perform simple, tolerate minimal coworker and supervisor contact, and manage end of day, but not fast-paced quotas. (R. 26). The ALJ rejected the opinion of plaintiff's therapist that he could not handle competitive work, because it was on an issue reserved for the Commissioner and the opinion that plaintiff would be off task during the workday and miss several days a month because it was "conclusory and offered without explanation." (R. 27).

Next, the ALJ, relying on the testimony of the vocational expert, found that, given her residual functional capacity, the plaintiff could perform the following work: kitchen helper (DOT 318.687-010; 310,00 jobs in the national economy); sweeper/cleaner (DOT 389.683-010; 1,380,000 jobs); or cleaner/hospital (323.687-010; 454,000 jobs). (R. 28). Accordingly, the ALJ found plaintiff not disabled and not entitled to benefits under the Act. (R. 29).

## II.

If the ALJ's decision is supported by substantial evidence, the court on judicial review must uphold that decision even if the court might have decided the case differently in the first instance. See 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Beardsley v. Colvin*, 758 F.3d 834, 836 (7th Cir. 2014). To determine whether substantial evidence exists, the court reviews the record as a whole, *Biestek v. Berryhill*, – U.S. –, –, 139 S. Ct. 1148, 1154 (2019), but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses. *Beardsley*, 758 F.3d at 837. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits," the court must defer to the Commissioner's resolution of that conflict. *Binion v. Chater,* 108 F.3d 780, 782 (7th Cir.1997); *Schloesser v. Berryhill*, 870 F.3d 712, 717 (7th Cir. 2017)

The substantial evidence standard is a low hurdle to negotiate, *Biestek*, 139 S. Ct. at 1154, but, in the Seventh Circuit, the ALJ also has an obligation to build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015); *O'Connor–Spinner v. Astrue,* 627 F.3d 614, 618 (7th Cir.2010). The court has to be able to trace the path of the ALJ's reasoning from evidence to conclusion. *Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015); *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011). Even if the court agrees with the ultimate result, the case must be remanded if the ALJ fails in his or her obligation to build that logical bridge. *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)(". . . we cannot uphold a decision by an administrative agency, any more than we can uphold a decision by a district court, if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result."). The subjectivity of the requirement – one reader's Mackinac Bridge is another's rickety rope and rotting wood nightmare

6

– makes it difficult for ALJs hoping to write acceptable decisions that stand up to judicial scrutiny when challenged. But, at the same time, the Seventh Circuit has also called this requirement "lax." *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008); *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008). "If a sketchy opinion assures us that the ALJ considered the important evidence, and the opinion enables us to trace the path of the ALJ's reasoning, the ALJ has done enough." *Stephens v. Heckler*, 766 F.2d 284, 287-88 (7th Cir. 1985).

### III.

The plaintiff has only one issue with the ALJ's decision. He argues that the ALJ improperly rejected his therapist's opinion and, given the ALJ's discussion of why he did so, the court agrees that a remand is necessary.

As the ALJ noted, in August of 2017, Ms. Cohen-Stein submitted her opinion that competitive employment was not an option for plaintiff, noting that he had significant limitations with sustained concentration and memory and social interaction which would preclude performance of work-related activities for up to 15 percent or more of a day. Ms. Cohen-Stein concluded that the claimant would be "off task" for 30 percent of a workday. She felt plaintiff would likely be unable to complete an eight-hour workday five days or more per month. (R. 27, 990-96). The ALJ went on to say that he assigned Ms. Cohen-Stein's assessment of plaintiff's capabilities:

> little weight, as her statement that the claimant cannot work goes towards an issue reserved to the Commissioner. Moreover, her conclusion that the claimant would be off task during the workday and would miss five or more days of work per month is conclusory and offered without explanation.

(R. 27).

As the plaintiff applied for benefits in 2016, the so-called "treating source rule" applies. *Winsted v. Berryhill*, 923 F.3d 472, 478 (7th Cir. 2019); *Gerstner v. Berryhill*, 879 F.3d 257, 261

(7th Cir. 2018). That means that the opinions of his "main," or treating, doctors on the nature and severity of a plaintiff's condition are entitled to controlling weight unless they are unsupported by medical findings or inconsistent with the record. See 20 C.F.R. § 416.927(c)(2); *Gerstner,* 879 F.3d at 261. *Stage v. Colvin*, 812 F.3d 1121, 1126 (7th Cir. 2016). An ALJ may not reject the controlling weight of a source's opinion without giving a "sound explanation." See § 416.927(c)(2); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). The explanations the ALJ gave here, however, are not sound, especially in view of the treatment records and narrative statements regarding plaintiff's abilities that Ms. Cohen-Stein submitted for the record.

From time to time, in assessing a treating source's opinion ALJs will interject the admonition that the determination of whether a claimant is disabled is a decision reserved for the Commissioner. The phrase almost always causes issues on review. Whether a claimant qualifies for benefits is a question of law, *Garcia v. Colvin*, 741 F.3d 758, 760 (7th Cir. 2013), but a medical opinion that a claimant is unable to work is not an improper legal conclusion. *Bjornson v. Astrue*, 671 F.3d 640, 647–48 (7th Cir. 2012) (remanding for the ALJ to consider the opinion that the claimant "remained unable to work"); *Lambert v. Berryhill*, 896 F.3d 768, 776 (7th Cir. 2018). ALJs must consider medical opinions about a patient's ability to work full time because they are relevant to the RFC determination." *Garcia*, 741 F.3d at 760; *Lambert*, 896 F.3d at 776.

In other words, an ALJ need not simply accept a medical opinion that a claimant is unable to work. But he does have to consider it as relevant to the nature and severity of a claimant's impairments. *Loveless v. Colvin*, 810 F.3d 502, 507 (7th Cir. 2016). Opinions about being unable to function in a competitive workplace, or being unable stay on task throughout a workday are opinions an ALJ must consider. It was improper for the ALJ to simply reject them as being

'reserved for the Commissioner.

As the ALJ said, Ms. Cohen-Stein's experience with plaintiff left her with the conviction that he could not engage in competitive work. In other words, he needed some type of accommodation or sheltered workplace. She also felt he couldn't stay on task or show up regularly for work throughout a month. Those were opinions the ALJ had to come to terms with, *see Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014), no different that the treating physician's opinion in *Lambert* that the claimant's chronic back pain was so limiting that he could not perform even sedentary work. As the Seventh Circuit has explained, such an assessment, like Ms. Cohen Stein's here, is "not an improper legal conclusion." *Lambert*, 896 F.3d at 776.

That wasn't the only reason the ALJ gave for rejecting Ms. Cohen Stein's opinion. He also said "her conclusion that the claimant would be off task during the workday and would miss five or more days of work per month is conclusory and offered without explanation." (R. 27). Clearly, an ALJ may discredit a treating source's opinion if it is not supported by the medical record or a treating source's own treatment notes. *See Winsted*, 923 F.3d at 478; *Gerstner*, 879 F.3d at 261; *Loveless*, 810 F.3d at 507. But that's not what the ALJ had before him here.

The fact is, however, the ALJ glossed over – or, one could say, even ignored – Ms. Cohen-Stein's notes and narrative explanation for her assessment of plaintiff's capabilities and limitations. They certainly provide an explanation for her opinion. In her narrative, Ms. Cohen-Stein explained that when plaintiff is stressed by environmental and academic demands, his functioning deteriorates: he draws unusual cartoons, creates unusual "science experiments." He is able to compensate in these ways, but it takes a lot of time out of his school day to do so. (R. 1003). That wouldn't do in a work environment, of course. Moreover, she pointed out that, even with the accommodations

9

plaintiff received at school, he could not overcome his issues with socialization, understanding directions, and attending to material. (R. 997-98).

Then there are about three years' worth of treatment notes. (R. 1009-32). Such notes are often unhelpful in determining whether a plaintiff can or cannot work. Particularly when it comes to mental impairments, "a person who suffers from a mental illness will have better days and worse days, so a snapshot of any single moment says little about her overall condition." *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011). Often, treatment notes are cryptic. And, often, a therapist, psychologist, or psychiatrist will offer an opinion that an individual is completely disabled, but his or her treatment notes will be of a person who is essentially normal, unremarkable or, at least, not terribly dire. In such instances, there can be no way for a reviewing court to trace the leap from entries noting normal thought process, judgment, attention, concentration, etc., to an opinion that the patient is completely disabled. But, this is not such a case. The treatment notes here are consistent; the ALJ just failed to "grapple with" them. *Hardy v. Berryhill*, 908 F.3d 309, 313 (7th Cir. 2018). Each entry is brief, to be sure, but collectively they paint a complete and reliable picture. *Cf. Brown v. Colvin*, 845 F.3d 247, 253 (7th Cir. 2016) ("...the mere absence of detailed treatment notes, without more, is insufficient grounds for disbelieving the evidence of a qualified professional."). Plaintiff has needed, and continues to need, accommodation for his ADHD, and even that's not sufficient to bring him up to speed. His delusional ideas lead to unusual – and unsuccessful — ways to manage his ADHD. He's further hamstrung by his hearing loss, speech impediment, and struggles with mastering ASL. (R. 1009-32). Reading these records of treatment sessions, it strikes one forcefully that it would be difficult at best for plaintiff to function in a normal work environment without an accommodation system. More importantly, it is impossible to see how

the ALJ could say that Ms. Cohen-Stein's opinion is "without explanation" or unsupported by her treatment notes. *Compare Kuykendoll v. Saul*, 801 F. App'x 433, 437 (7th Cir. 2020)(doctor's notes reflected only normal clinical and so provided no explanation for his opinion that claimant was disabled).

Simply put, the ALJ erred by ignoring or not considering Ms. Cohen-Stein's narrative report and her treatment notes, both of which lend support to her opinion. *See Reinaas v. Saul,* 953 F.3d 461, 466 (7th Cir. 2020)*; Lambert*, 896 F.3d at 775; *Minnick*, 775 F.3d at 938. As a result, this case should be remanded.

## CONCLUSION

For the foregoing reasons, the plaintiff's Motion in Support of Summary Remand [Dkt. #22] is granted and this case is remanded to the Commissioner for further proceedings.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 3/29/21